IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JASON A. MOORE,

        Petitioner,

v.                                        Civil Action No. 1:07cv166
                                                (Judge Keeley)

JOE DRIVER, Warden,

        Respondent.

**OPINION/REPORT AND RECOMMENDATION**

On December 4, 2007, the *pro se* petitioner filed a Petition for Writ of Habeas Corpus Under 28 U.S.C. §2241, in which he asserts that he is unlawfully being denied transfer to a Residential Release Center ("RRC"). The petitioner filed an amendment to his petition on December 27, 2007, adding additional claims regarding his custody classification and his eligibility to participate in the Bureau of Prisons' Residential Drug Abuse Treatment Program ("RDAP"). The petitioner paid the required filing fee on January 15, 2008. This matter is before the undersigned for a preliminary review and Report and Recommendation pursuant to LR PL P 83.09.

**I.   The Pleadings**

**A.   The Petition**

According to the petition, the petitioner was sentenced by the United States District Court for the Middle District of Florida to 120 months imprisonment on May 15, 2002, for conspiracy to distribute ecstacy and MDMA. The petitioner further asserts that the Bureau of Prisons' ("BOP") regulation which restricts the time an inmate can serve in an RRC to the lessor of 10% of the inmates

1

time to be serve is unlawful. Therefore, the petitioner seeks his immediate transfer to an RRC, without regard to the BOP's 10% rule.

B. **The Amended Petition**

In his amended petition, the petitioner adds two additional grounds for habeas corpus relief. First, the petitioner asserts that the BOP erred in calculating his security classification points and unlawfully violated his right to equal protection of the law. In support of this claim, the petitioner asserts that his unit team did not properly investigate a misdemeanor charge in his criminal history when they scored his custody classification.

Second, the petitioner asserts that the BOP has denied him entry into the 500 hour residential drug treatment program, which violates the *ex post facto* clause. In support of this claim, the petitioner asserts that the BOP's failure to permit him to participate in the 500 hour drug program has had an adverse impact on his federal sentence because he is being denied early release. Moreover, the petitioner asserts that the BOP's decision violates his protected liberty interests.

## II. Analysis

A. **The BOP's 10% Rule**

Prior to December 2002, the BOP had a policy of placing prisoners in a RRC for up to six months, regardless of the total length of the inmate's sentence. See BOP Program Statement 7310.04. However on December 13, 2002, the Office of Legal Counsel for the Department of Justice issued a memorandum stating that this practice was inconsistent with 28 U.S.C. § 3624(c) which, in its opinion limited an inmate's placement in a RRC to the lessor of six months or ten percent of the inmate's sentence. Section 364(c) provides as follows:

> The Bureau of Prisons shall, to the extent practicable, assure that
> a prisoner serving a term of imprisonment spends a reasonable part,
> not to exceed six months, of the last 10 per centum of the term to be

served under conditions that will afford the prisoner a reasonable
opportunity to adjust to and prepare for the prisoner's re-entry into
the community. The authority provided by this subsection may be
used to place a prisoner in home confinement. The United States
Probation System shall, to the extent practicable, offer assistance
to a prisoner during such pre-release custody.

The BOP adopted the Office of Legal Counsel's interpretation of the statute, and numerous habeas petitions challenging the December 2002 Policy were filed. The First and Eighth Circuits, as well as many district courts, [1] found the policy contrary to the plain meaning of 18 U.S.C. § 3624(b) which states:

> The Bureau shall designate the place of the prisoner's imprisonment.
> The Bureau may designate any available penal or correctional facility
> that meets minimum standards of health and habitability established
> by the Bureau, whether maintained by the Federal government or
> otherwise and whether within or without the judicial district in which
> the person was convicted, that the Bureau determines to be appropriate
> and suitable, considering -
>
> (1) the resources of the facility contemplated;
>
> (2) the nature and circumstances of the offense;
>
> (3) the history and characteristics of the prisoner;
>
> (4) any statement by the court that imposed the sentence -
>
> (A) concerning the purposes for which the sentence to imprisonment
> was determined to be warranted; or
>
> (B) recommending a type of penal or correctional facility as
> appropriate; and
>
> (5) any pertinent policy statement issued by the Sentencing Commission
> pursuant to section 994(a)(2) of title 28.

---

[1] See Goldings v. Winn, 383 F.3d 17 (1st Cir. 2004); Elwood v. Jeter, 386 F.3d 842 (8th Cir. 2004); Cato V. Menifee, 2003 WL 22725524 at *4 (S.D.N.Y. Nov. 20, 2003 (collecting cases).

In response to those decisions, the BOP created new regulations in 2005 governing the placement of inmates in RRCs. These regulations state that the BOP was engaging in a "categorical exercise of discretion" and choosing to "designate inmates to [RRC] confinement . . . during the last ten percent of the prison sentence being served not to exceed six months." 28 C.F.R. § 570.20-21. The new regulation expressly prohibits placement of prisoners in RRCs prior to the pre-release phase of imprisonment and provides:

> When will the **Bureau designate** inmates to **community** confinement?
>
> (a) The Bureau will designate inmates to community confinement only as part of pre-release custody and programming, during the **last ten percent** of the **prison sentence** being **served**, not to exceed six months.
>
> (b) We may exceed the time-frames only when specific Bureau programs allow greater periods of community confinement, as provided by separate statutory authority (for example, residential substance abuse treatment program . . . or shock incarceration program) . . .

28 C.F.R. § 570.21. (Emphasis added)

It is this regulation which prompts the petitioner's habeas challenge in the instant case.

**1. <u>Ripeness</u>**

The Supreme Court has recognized that "[t]he ripeness doctrine 'is drawn from both Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction.'" <u>Nat'l Park Hospitality Ass'n v. Dep't of Interior</u>, 538 U.S. 803, 807 (2003). "The central concern of both power and discretion is that the tendered case involves uncertain and contingent future events that may not occur as anticipated, or indeed may not occur at all." <u>Metzenbaum v. Fed. Energy Regulatory Comm'n</u>, 675 F.2d 1282, 1289-1290 (C.A.D.C. 1982) (citations omitted). The basic rationale of ripeness is

> to prevent the courts, through avoidance of premature adjudication,

> from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties. The problem is best seen in a two fold aspect, requiring us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.

Abbott Laboratories v. Gardner, 387 U.S. 136, 148-49 (1967) (overruled on other grounds).

In this case, the petitioner's projected release date is June 14, 2010. See www.bop.gov (inmate locator). At this time then, the petitioner merely anticipates that the BOP will apply 28 C.F.R. § 570.21 in a manner so as to limit his eligibility for placement in a RRC to the last 10% of his sentence. However, because at least four Courts of Appeals have found that the BOP regulation limiting a prisoner's placement in a RRC to the lessor of ten percent or six months of his sentence was an improper exercise of the BOP's rulemaking authority, the petitioner seeks a preemptive ruling requiring the BOP to place him in a RRC for the last six months of his sentence.[2]

Relying on the clear weight of authority, this District has likewise concluded that the challenged regulations are invalid. See Smith v. Gutierrez, 2:06cv121 (N.D.W.Va. Sept. 26, 2007) (Maxwell, Sr. J.); Simcoke v. Phillips, 1:07cv77 (N.D.W.Va. Sept. 18, 2007) (Keeley, C. J.); Jaworski v. Gutierrez, 5:06cv157 (N.D.W.Va. Aug. 23, 2007) (Stamp, Sr. J.); Murdock v. Gutierrez, 3:06cv105 (N.D.W.Va. July 24, 2007) (Bailey, J.). However, in doing so, the Court has made clear that such a decision does not entitle any inmate to an Order from this Court directing that he be immediately transferred to a CCC for the last six months of his sentence. Id. In fact, the Court has explicitly noted that the BOP's regulations are invalid only to the extent that an inmate's placement

---

[2] The Fourth Circuit Court of Appeals has not yet ruled on the legality of 28 C.F.R. § 570.21. However, the Tenth, Second, Eighth and Third Circuits have ruled the same improper. See Wedelstedt v. Wiley, 477 F.3d 1160 (10th Cir. 2007); Levine v. Apker, 455 F.2d 71 (2nd Cir. 2006); Fults v. Sanders, 442 F.3d 1088 (8th Cir. 2006); Woodall v. Federal Bureau of Prisons, 432 F.3d 235 (3d Cir. 2005).

5

in a RRC is limited to the lessor of 10% of his sentence, or six months, without consideration of the five factors set forth in 18 U.S.C. § 3621(b). Id. Thus, the invalidation of the BOP's regulations merely entitles an inmate to have his CCC placement considered in accordance with the five factors set forth in § 3621(b).

These decisions, however, do not apply to this petitioner because he is not yet near the end of his sentence term. While Congress has mandated RRC placement for federal prisoners, at best, that placement is not required until the last six months of incarceration.[3] However, in order to facilitate that placement, under P.S. 7310.04, the BOP considers an inmate for RRC placement when he or she is within eleven to thirteen months of his or her projected release date. Based upon the record now before the Court, the petitioner's Unit Team has made no official recommendation about the length of his RRC placement. Instead, the petitioner has merely been given a preliminary or projected date for RRC placement. Nevertheless, the petitioner has not yet been deemed eligible for RRC placement. Depending on the circumstances, the petitioner's claim only becomes ripe when his Unit Team assesses his eligibility for RRC placement and completes an official RRC referral form.

If the petitioner's Unit Team recommends RRC placement for the last six months of his term of incarceration, then he will have received the maximum benefit for which 18 U.S.C. § 3621(c) provides, and he will have no need of this Court's intervention. Moreover, considering the recent decisions of this district, petitioner's Unit Team may not rely on 28 C.F.R. § 570.20-21 and recommend a categorical placement in a RRC facility. Rather, petitioner's Unit Team may elect to

---

[3] The statutory mandate for placement of an inmate in pre-release custody is set forth in 18 U.S.C. § 3624(c). Under this provision, petitioner may receive up to a six month stay in a CCC.

review his eligibility for RRC placement based on the five factors set forth in 18 U.S.C. § 3621(c). In that case too, the petitioner will have no need for the Court's intervention.

**B.  Petitioner's Custody Classification**

A § 2241 petition is used to attack the manner in which a sentence is executed. See 28 U.S.C. § 2241. More specifically, a § 2241 petition is appropriate where a prisoner challenges the fact or length of his confinement, but generally not the conditions of that confinement. See Preiser v. Rodriguez, 411 U.S. 475, 499-500 (1973).

In this ground, the petitioner does not attack the execution of his sentence. Instead, the petitioner seeks an order directing the BOP to calculate his security and custody classifications in such a way that affect various conditions of his confinement. Clearly, that claim should have been raised pursuant to a civil rights complaint. Id. (a civil rights action is a proper remedy for a prisoner challenging the conditions of his prison life). Because a petition for writ of habeas corpus under 28 U.S.C. § 2241 is not the proper avenue in which to seek the requested relief, this ground should be dismissed.

**C.  Petitioner's Participation in the RDAP**

Attached to the petitioner's amended petition is his Residential Drug Abuse Notice. In the notice, the petitioner has been informed by BOP staff that he is eligible for participation in the RDAP, but that he is not eligible for the one-year sentence reduction due to the nature of his instant offense.

The Violent Crime Control and Law Enforcement Act of 1994 (VCCLEA) amended 18 U.S.C. § 3621 to require the BOP to "make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse." 18 U.S.C.

§ 3621(b). To carry out this requirement, the BOP must provide residential substance abuse treatment for all eligible prisoners, subject to the availability of appropriations. 18 U.S.C. § 3621(e)(1). An "eligible prisoner" is one who is "determined by the Bureau of Prisons to have a substance abuse problem," and who is "willing to participate in a residential substance abuse treatment program." 18 U.S.C. § 3621(e)(5)(B)(i) and (ii). As an incentive for the successful completion of the residential treatment program, the BOP may, in its discretion, reduce an inmate's sentence by up to one year. 18 U.S. C. § 3621(e)(2); see also Lopez v. Davis, 531 U.S. 230 (2001).

Sections 3621(b) and (e) clearly state that determining which prisoners are eligible for substance abuse treatment is within the sole discretion of the BOP, as is the decision to reduce a prisoner's sentence by up to one-year upon the successful completion of such programs. Moreover, pursuant to 18 U.S.C. § 3625, Congress has specifically excluded these subsections from judicial review under the Administrative Procedures Act ("APA"). See Davis v. Beeler, 966 F.Supp. 483, 489 (E.D.Ky. 1997). Section 3625 states: "[t]he provisions of section 554 and 555 and 701 through 706 of title 5, United States Code, do not apply to the making of any determination, decision, or order under this subchapter."[4]

Accordingly, any substantive decision by the BOP to grant or deny the petitioner admittance into the RDAP, or regarding his eligibility to receive a one-year sentence reduction, is not reviewable by this Court. However, where judicial review under the APA is specifically excluded by statute, the United States Supreme Court has found that two questions are still appropriate for the Court's review. Davis v. Beeler, 966 F.Supp. at 489. The first question is whether any cognizable

---

[4] Pursuant to 5 U.S.C. § § 701 and 702, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action with the meaning of a relevant statute is entitled to judicial review thereof," except to the extent that a statute precludes judicial review.

constitutional claim has been presented. See Webster v. Doe, 486 U.S. 592 (1988). The second question is whether an agency's interpretation of a statute is contrary to well-settled law. See Neal v. United States, 516 U.S. 284 (1996)).

### 1. Petitioner's Constitutional Claims

#### a. Ex Post Facto Clause

In the amended petition, the petitioner asserts that the BOP's decision that he is not eligible for the RDAP and subsequent one-year sentence reduction is a violation of the *ex post facto* clause. This claim is without merit.

Article I, § 10, of the Federal Constitution provides that "[n]o States shall ... pass any ... ex post facto law." The central concerns of this provision are "the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated." Weaver v. Graham, 450 U.S. 24, 30, 101 S.Ct. 960, 965 (1981). "To fall within the ex post facto prohibition, a law must be retrospective - - that is, it must apply to events occurring before its enactment - - and it must disadvantage the offender affected by it, by altering the definition of criminal conduct or increasing the punishment for the crime." Lynce v. Mathis, 519 U.S. 433, 441 (1997) (internal quotations and citations omitted). In other words, the ex post facto clause prohibits Congress from retroactively altering the definition of crimes or increasing the punishment for criminal acts. Collins v. Youngblood, 497 U.S. 37, 41 (1990).

In this case, other than his conclusory and self-serving statements that the BOP's decision violates the *ex post facto* clause, the petitioner has failed to provide any support for such an argument. First, the petitioner fails to establish that the *ex post facto* clause even applies to an administrative decision by a federal agency. Second, even if it did, the petitioner has not

9

demonstrated how the BOP's decision has either increased the legal consequences of his crime, or increased the punishment for such crime. Thus, this claim is without merit and should be dismissed.

      b. Due Process

In the amended petition, the petitioner asserts that the BOP's decision that he is not eligible for the RDAP and the one-year sentence reduction is a violation of his right to due process. This claim is also without merit.

It is well established that in order to demonstrate a due process violation, a petitioner must show that he was deprived of a liberty or property interest protected under the Fifth Amendment. Greenholtz v. Inmates of Neb. Penal & Correctional Complex, 442 U.S. 1, 7 (1979). However, the Supreme Court has made it quite clear that a prisoner has no constitutional or inherent right in being released before the completion of a valid sentence. Id.; see also Sandin v. Conner, 515 U.S. 472, 484 (1995). In fact, directly on point with this case, several courts, including this one, have found that there is no protected liberty interest in discretionary early release under 18 U.S.C. § 3621(e) for completion of the RDAP. See Cook v. Wiley, 208 F.3d 1314, 1322-23 (11th Cir. 2000); Venegas v. Henman, 126 F.3d 760, 765 (5th Cir. 1997); Jacks v. Crabtree, 114 F.3d 983, 986 n. 4 (9th Cir. 1997); Fonner v. Thompson, 955 F.Supp. 638, 642 (N.D.W.Va. 1997).

      c. Equal Protection

Without specifically saying so, it appears the petitioner may also be asserting a claim that the BOP's decision that he is not eligible for the RDAP and subsequent one-year sentence reduction is a violation of his equal protection rights. This claim is also without merit.

To be successful on an equal protection claim, the plaintiff must demonstrate "that he has been treated differently from others with whom he is similarly situated and that the unequal

treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F. 3d 648, 654 (4th Cir. 2001). If the plaintiff makes such showing, "the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." Id.

Here, the petitioner fails to assert that any similarly situated persons were treated differently than him, or that the alleged unequal treatment was the result of intentional or purposeful discrimination.

### III. Recommendation

For the foregoing reasons, the undersigned makes the following recommendations:

(1) the petitioner's claim regarding his RRC placement be **DENIED** and **DISMISSED without prejudice** as premature;

(2) the petitioner's claim regarding his custody classification be **DENIED** and **DISMISSED without prejudice** to the petitioner's right to re-file that claim in a civil rights action;

(3) the petitioner's claim regarding his eligibility for the RDAP and the subsequent one-year sentence reduction be **DENIED** and **dismissed with prejudice;**

(4) this case be closed and stricken from the Court's active docket.

Within ten (10) days after being served with a copy of this Opinion/Report and Recommendation, any party may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections shall also be submitted to the Honorable, Irene M. Keeley, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th

Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket.

DATED: January 29, 2008.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE